25-7062 Callaway v. Independent School District Mr. Warren Yes, Your Honor. May it please the court. My name is Jack Warren. I represent the appellant plaintiff in the underlying matter on the claims asserted on behalf of her minor son referred to as DC in the complaint related to an incident that occurred in the fall of the 2020-2021 school year. And we're here raising issues with the district court's dismissal of a few of the claims made by the plaintiff in that case. And first, I'd like to start specifically with the dismissal of the 14th Amendment claim based on the danger creation theory, which is a very difficult and sordid claim. It has not honestly an immense amount of case law from the court. But in the district court, the claim was dismissed based on a finding that the plaintiff had failed to establish the precondition of affirmative conduct. As the court knows, there's two preconditions that must be set aside before the sixth element test. And the district court found that the plaintiff's allegations in this case constituted, I think you said, at most inaction, which the court has been consistent that that inaction does not satisfy the affirmative conduct requirement. Here, I think our basis for the error on that claim is that the court failed to consider, as the courts held in numerous different cases, Currier, Armijo, TD v. Patton, that affirmative conduct can take the form of removing what would otherwise be a safety valve or private sources of aid. And that is relevant in this case because what occurred was DC was a fifth grade student, had been diagnosed with autism, had been on an IEP with the school since his kindergarten year that required he be accompanied basically anywhere around the school with an adult aid. And in that IEP, including the IEP for the 2020-2021 school year, was a requirement that he be accompanied by an aid to the bathroom and all toileting activities. Does that mean the aid would go inside the restroom with the child? It's my understanding, and that's not necessarily alleged in the complaint, but it's my understanding that yes, the aid would be present or in the vicinity of the restroom while he was using it. And part of that is I think he struggles, but I think the photograph was taken of him using the restroom because he would pull his pants down, right? And that's where a photo was taken while he was doing that, which is part of the reason I think that there was a need to have him not be alone in a restroom with other students. So back to the Affirmative Act. Sure. You said the Affirmative Act can be removal of a safety valve. Correct. But the Affirmative Act here was the failure to accompany the child to the bathroom. So I disagree slightly. The Affirmative Act here was at the start of the school year, the special education teacher. So D.C. was in a class with approximately eight students with a special education teacher and the accompanying aides that might have been there. The special education teacher had some sort of absence because of an injury. So the school had D.C.'s aide cover, right, essentially taking D.C.'s aide from him, right? Now she was still in the class, ostensibly, but had other expectations of supervising other students as well. Maybe I missed something, but this was a singular event that he wasn't accompanied to the bathroom. There's not an allegation that after the original teacher left and the assignments, the responsibilities were shifted, that he was never accompanied to the bathroom again. Is that the allegation? Well, so the allegation is, yes, you're correct that it is related to a singular event, although we didn't include other allegations of whether or not this had occurred in other situations because that... Well, the reason you couldn't is because the aide was still available, maybe not as available, and maybe on this particular occasion the aide was too busy, and if there had been three people in the room, he would have been accompanied to the bathroom, but with two he wasn't. But it's not like it was a necessary result of having fewer people in the classroom that he would never be accompanied to the bathroom. Am I correct about that? Well, I can tell you that an incident similar to this had not occurred when his aide was not serving as the special education teacher as well, and I think it's important the IEP also says he used to be accompanied essentially anywhere in school. It says specifically to the lunchroom, to recess, and he was able to leave the class, walk into a bathroom with much older students. He was a fifth grade student at a middle school that went up to eighth grade. It was in a seventh or eighth grade type hall, and that essentially by stripping him of his aide or the access to the aide, that was the affirmative act that led to this incident occurring. Can you tell me where you pleaded that affirmative act and the complaint? I mean, I see lots of allegations about the failure to ensure that the classroom was adequately staffed, the failure to ensure that the explicit requirements of D.C.'s IEP were being followed, and the failure to properly train and supervise OPS employees, and you allege in your brief that you allege that there was an affirmative act essentially by having the full-time aide serve as the defective teacher, but I don't see that allegation as such in your complaint. Can you point me to that? Certainly, and I certainly expected this question. I would agree that it is not as explicitly laid out as I would have preferred. There is a statement in there that, I can't remember the exact paragraph number, but that upon the special education teachers' leave that the school district elected to have aides such as Ms. Pearson, who was D.C.'s aide, serve as the- You don't allege that Lee or Brent made that decision, though, and you've got to have an allegation of an individual act on their part. So I guess I slightly dispute that only to the extent that, yes, I agree that the specific words that that specific individual did not take that act. I believe it says the defendants, and the individual defendants in this case were the principal who- Well, you have to plead specific acts against, I mean, you've got to be specific on this for individual liability here. Sure, I guess I believe that-  So Brent was the- I mean, what did you plead is what I'm asking. I believe it said that the defendants elected to staff the special education classroom with aides, and the defendants being the director of the special education services at the school who is involved in D.C.'s IEP, as well as the principal, who I believe certainly could be inferred has the authority- So that's in the factual allegations is what you're saying? It is, and I believe the allegations about their roles at the schools in the portion of the complaint that references the parties discusses their roles at the school. Would it matter if the teacher had gone home sick for the day as opposed to have been on an extended leave as I understand it? What's an injury? That's an interesting question. I think it would certainly matter for other elements of the danger creation test, such as potentially like the shock to conscience or recklessness type discussion. Would it matter if it hadn't been a photograph taken, but the sink had overrun and he had slipped and harmed himself? So that's an important point that I wanted to get to as well, is I don't think it does. I think that the danger creation test talks about placing an individual in danger. I don't think it necessarily matters the specific danger or knowledge of what that specific danger may be. Does it have to be foreseeable though? One is foreseeable, the other one's not? Again, I think that could potentially go to the other elements such as like a shock to conscience or reckless. I don't think it would be, you know, necessarily reckless or conscious shocking if something that could never have been foreseen occurred. But here I think the point is that allowing an autistic child that is not to be alone into a bathroom with older students unattended is rife for risk. I think that's what the case law says is placing them in danger of a risk. Does it matter that there was not a reply brief filed here when some of the, I think the last four of the creating danger elements are contested? And we haven't heard from you on that. Is there a waiver issue involved there? I don't believe so, but I don't think that, you know, part of the reason for that is the district court, which of course the court is entitled or has the ability to affirm on any grounds, but the district court never even reached any, that was never discussed by the district court. The district court found solely that there was no affirmative conduct and that was the end of the situation. And because of the apparent lack of affirmative conduct that the dismissal of prejudice was appropriate. So, you know, I think that those other elements obviously matter to the claim, but for the purposes of the appeal of the district court's decision, I don't know that it does. And just quickly with the little bit of time I have here, the second aspect of the appeal is on the dismissal of the ADA and Rehabilitation Act claims. There, the district court dismissed those two claims mainly on the finding first that D.C. was provided access to the restroom, which again, as kind of noted in our brief, I think that misses the mark on the requirements of both the ADA and the Rehabilitation Act that it's not just access, but meaningful access. And simply having, you know, yes, he could use the restroom, but that's not so much the issue. The issue is that he cannot meaningfully use the restroom to accommodate his disabilities. And so I think that district court are there. And then the district court found that there was no intentional discrimination, which the court has found, and I think is correct, that intentional discrimination is required for compensatory damages to be available. Now, the word intentional I think often, you know, means something in one context, but the court has said that intentional discrimination can be found through a showing of deliberate indifference. And, you know, here I think that certainly it could be inferred of deliberate indifference of knowledge of removing a safety valve and aid for an autistic student that needed it. That is an obvious and foreseeable consequence that, you know, that their disabilities will be not accommodated and they won't have access to the program. Are you conceding that you even have to show intentional act at the pleading stage? Well, I think that the... I mean, we have some unpublished authority to that effect. Well, I think that the case law says it has to be intentional. I think the question is what is intentional. I mean, I think the inference needs to be that there has to be some kind of deliberate indifference to the situation for compensatory damages. If we were seeking, you know, obviously non-compensatory damages, I think it would be different. I understand that. I'm just saying we haven't held in a published opinion that you even have to have intentional discrimination. There has been an unpublished opinion that I'm aware of that we applied. We said there needed to be intentional discrimination and it applies at the pleading stage. I'm just wondering if you're conceding that.  My reading of the law and my understanding is that intentional discrimination is a requirement of any such claim. And you think this was the deliberate indifference aspects of it satisfied that? Correct. I think that there's a plausible inference of deliberate indifference. I'm not going to go so far as to say it was intentional in the way that we think of intentionality. You know, intending to cause a specific harm, but that it was obviously indifferent to the consequences of this situation happening. And then the last thing is the court referenced, I think, a case from New Mexico. I don't have it in front of me right this second. Your time has expired. That's how much you've gone over the time. Okay. Well. Wrap it up quickly. A case about a single violation of an IEP can't serve as a violation of an ADA or 504 claim. And I just want to make clear, our claim is not about a violation of the IEP. It's about the failure to accommodate. I think the IEP is relevant to that because it shows their knowledge of it and what a reasonable accommodation would look like. But it's not based on an IEP. Thank you. Thank you. Thank you. Thank you, Your Honors, and may it please the court. My name is Adam Haven. I'm here on behalf of the school district and the two individual defendants, Principal Lee and Stephanie Brent. To get started on why we're here today, I believe we're here because plaintiff has now, on multiple occasions, unsuccessfully attempted to transform what is, at best, a common law negligence claim into a claim for constitutional or federal harm. Under existing Supreme Court case law and this court's case law, that attempt must fail. To start with the first claim that counsel addressed. Can I butt in there since you raised negligence? Is that still going in the state court? It is not, Your Honor. That claim was dismissed without prejudice by the district court. Nothing is preceded as to that claim. So turning to the 14th Amendment danger creation claim, I think the bedrock for that, for analysis of substantive due process claim in this context, is the Supreme Court's decision in DeShaney, which makes abundantly clear why this type of claim must fail. That case talks about how a plaintiff cannot hold a government entity liable merely because that government entity failed to protect the plaintiff from private violence. Now, in the years since DeShaney, this court and other circuit courts have recognized the danger creation exception, which is what plaintiff attempts to rely on here. However, as the district court appropriately recognized, it fails at step one under the facts split in this complaint. There is no affirmative action that was taken by any of the defendants. I share, and I believe it was Judge Moritz's question earlier, as to specificity as to any individual defendant and whether that was appropriately pled. I think the answer to that question is no. The one paragraph in the complaint that plaintiff cites to, I believe, is paragraph 44, and that has the language of the defendants elected to have the special education aid cover for the teacher. Well, that doesn't provide any specificity whether it was Defendant Lee, whether it was Defendant Brent that made that decision. Rather, we have a preliminary allegation early in the complaint introducing the parties that introduces Ms. Lee as the principal and Ms. Brent as the special education director, and I don't think that that gets the plaintiff where they need to go in this case. Moving on from that, as we've set out in our brief, and I think as Your Honor, Judge Phillips has touched on as well, I think it's a real problem for the plaintiff and the appellant in this case that we have also established four separate alternative bases on which this court can and should affirm the district court's decision, which are the second, third, fourth, I'm sorry, third, fourth, fifth, and sixth elements of a danger creation claim. And as Your Honor noted, plaintiff appellant didn't even respond to those allegations. I think that does raise a real waiver issue. And so even if this court were to disagree and rely on plaintiff's safety valve argument to find affirmative action, and I'm going to get to that in a moment because those cases are readily distinguishable, we nonetheless have multiple bases on which this court can and should affirm. So to turn to that affirmative act and the reliance on the quote unquote safety valve argument, plaintiff cites really two cases for that proposition, Currier and Briggs. Both of those cases are incredibly similar facts. They are instances where individual social workers were sued in their capacity as social workers who in both contexts had some knowledge of a prior history of abuse or at least reports of abuse to a child, that they then either in one case affirmatively recommended that that child be placed back in the custody of a known or believed abuser, or in another case we had a social worker who affirmatively discouraged the reporter of abuse from continuing to report abuse. Those are both instances where not only are they taking affirmative action, as opposed to here where we have, as Your Honors noted, a repeated reliance on an alleged failure to act. There we had affirmative action combined with several repeated instances of reasons why they had knowledge of the danger that they were putting the child back into. Is there anything in the complaint about what the danger to the child was? Why he needed to be accompanied to the bathroom? Your Honor. It said he needed to be accompanied anywhere. Is that right? Your Honor, I think I'm glad you raised that question because the allegations in the complaint, there are really three paragraphs that address the language in the IEP, which plaintiff relies on heavily in this case. The first one is in paragraph 34 of the complaint, I'm sorry, paragraph 35 of the complaint, where it talks about how DC should be attended by an aide to all locations in school, and then it specifies as examples, I'll grant, lunch, recess, and specials. There's no reference of a need to follow DC into the bathroom. And as I think Your Honor, Judge Phillips alluded to earlier, it would be a little troublesome also to expect an aide, a female aide. What about paragraph 39? Thank you, Your Honor. I was going to get to that, but I'll go ahead and jump to it. That's more specific. Yes, paragraph 39 is more specific as to the bathroom, but it's also specific as to the need that's being addressed, which is a need for assistance in toileting. Specifically, it says that DC may ask to be taken to the restroom if he needs that assistance. He requires adult attendance, and some assistance with toileting would indicate when he goes to the toilet he needs assistance. Your Honor, I would agree, but I do think that latter language is important, that he may request assistance if needed. And I think regardless of how the language is interpreted here— Well, we're at the dismissal stage here, so wouldn't this be enough to say that they were certainly aware that he needed assistance every time he went to the toilet, and he might need assistance in the toilet with toileting itself? Well, Your Honor, I think it would be potentially enough, certainly at this stage it would be enough, except for the fact that this is not the type of harm that the IEP was directed at. I think that's pretty clear from the language that's pled in the complaint. When the IEP was drafted, there's no indication from the allegations in the complaint that the IEP was intended to protect DC from a potential harm that he could be victimized by a bad actor that goes into the bathroom and inappropriately photographs him. The defendants certainly don't dispute that that was an unfortunate and regrettable incident. Does it matter what the threat was? There could have been many threats, couldn't there? As we discussed, he could have perhaps fallen, hit his head on the toilet or on a sink or anything else. Wouldn't that have been a pretty obvious threat as well? Well, Your Honor, I would say in the context of a danger— The threat has to be immediate, but— Yes, Your Honor. There's possible—several possible threats that could have been immediate to him, I suppose. The defendants would disagree with there being an array of possible immediate harms. I think at the time of the alleged affirmative conduct, it has to be a known and substantial risk with immediate threat of harm. And I think the type of harm at issue does matter. I don't believe that at the time when, as plaintiff alleges, an affirmative act was taken to not hire a replacement special education teacher, that it could have been foreseen or even contemplated that that would have led to this type of harm. Certainly, it might have led to— This was a junior high, wasn't it? I'm sorry, Your Honor? This was a junior high, wasn't it? I believe the allegations and the complaints state that D.C. was in the fifth grade at the time of the incident. There were older kids in this bathroom. There were, Your Honor. There were the allegations that it was in the seventh and eighth grade hallway. So the implication there being that—and I think the allegation does state that D.C. was confronted by an older student in the bathroom. However, I don't believe that that gets plaintiff over the line in terms of this being the type of harm that was contemplated. Your Honor, I see I'm getting down to somewhat limited time. I want to try and move to the ADA and Section 504 claims. Here, the district court dismissed plaintiff's ADA and Section 504 claims on two separate grounds. First, I want to briefly address the intentionality requirement that was raised, because I think we can get that out of the way, given that plaintiff has conceded today that deliberate indifference is required to be pled. At no point throughout this litigation, whether below in response to the defendant's motions to dismiss, whether on appeal in the opening brief, there was no reply brief filed. And then again today in the oral argument, counsel has not taken the position on behalf of appellant that there was no requirement to plead deliberate indifference. So moving away from that point to the meaningful access issue, really the only case that plaintiff appellant has consistently relied on for that proposition that D.C. was denied meaningful access is the Chafin case. And in that case, this court held that the plaintiffs were effectively trapped. It was a fairground case, and the plaintiffs were confined to wheelchairs, and they were attending a concert being put on at the fairgrounds. And the allegations there were that they were so trapped by the layout of the handicapped section that they couldn't leave. They couldn't go get food. They couldn't go to the bathroom. They were being bumped into and stepped on and all these sorts of things. And the defendants there said, well, it's enough that they at least had physical access, that they were there. You know, all those other considerations shouldn't apply. And this court rejected that argument for good reason. That is not meaningful access to the fairgrounds facilities. What we have here is readily distinguishable. We do not have a situation where there are allegations that D.C. was not provided meaningful access to the school district's bathroom. That's not at all the allegation. In fact, the allegations in the complaint are clear that the school district had provided the accommodation of an aide for years. But really what the allegations state is on this one isolated date that the plaintiff was, quote, allowed to leave the classroom and go to the restroom unattended. I don't believe under this court's case law that constitutes denial of meaningful access to the school's facilities, especially where what's really at the heart of the plaintiff's complaint is that a bad actor unforeseeably entered into the restroom and inappropriately photographed D.C. That is not something that the school district failed to provide accommodation against. It's an unfortunate, regrettable incident that occurred that the school district did not deny a reasonable accommodation for. Turning lastly to the only other issue that I don't believe I've addressed is the dismissal with prejudice of the danger creation claim. And I do want to clarify that that's the only claim that on appeal the appellant contests is the danger creation theory. Danger creation. We've talked today about how a necessary precondition of affirmative action is missing from the allegations in the complaint. On top of that, we have four separate elements that plaintiff has failed to plead and has now waived on appeal and failed to contest. That is at least five separate ways that it would be futile for the plaintiff to be granted an opportunity to amend their complaint. I think under this court's case law, it has been frequently established that under those circumstances where if there is a failure to state a claim, in addition with a futility of amendment, that dismissal with prejudice is not an abuse of discretion. With that, your honors, I've only got 30 seconds or so left. I'm happy to answer any questions you have, but I've covered everything I wanted to address today. Thank you, counsel. Thank you, your honors. Does the appellant have any time remaining? Thank you, counsel. Case is submitted. Counsel is excused and will be in recess until 9 tomorrow morning.